UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT
CIVIL ACTION NO. 2005-82-KKC

Eastern District of Kentucky
F I L E D

JUL 2 6 2007

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

KENNETH JAMES BEDFORD                                    Petitioner

v.

PATTI WEBB, Warden                                       Respondent

## REPORT AND RECOMMENDATION

Kenneth James Bedford is currently serving a sentence of life without parole eligibility for twenty-five years in the Green River Correctional Complex; acting *pro se*, he has filed a "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" complete with a sixty-one page memorandum in support. [Doc. 1[1].]   The warden answered, attached an appendix of pleadings from the state court, and moved either to dismiss the petition or, in the alternative, for summary judgment [Doc. 6/7.] As permitted by rule, Petitioner Bedford filed a reply to the answer [Doc. 13.] Following a court order, the warden supplemented the appendix. [*See* Docs. 14 & 15[2].] The motions are, therefore, ripe for review and have been referred to the undersigned for initial report and recommendation.

---

[1]As the motion was originally filed in the Western District, docket entry #1 contains the entire file as of the time of transfer.

[2]Despite a clear order to produce the Supreme Court of Kentucky's unpublished opinion dated August 22, 2002, in Case # 2000-SC-0357-MR, Respondent failed to do so.  Nor was the opinion available on various computerized databases or that Court's website.  Fortunately, the Supreme Court Clerk's office promptly faxed a copy of the opinion when asked to do so. Because that opinion forms part of the basis for the recommended decision on the petition, the Court attaches the Supreme Court of Kentucky's opinion as Appendix A to this Report and Recommendation.

1

Factual and Procedural Background

The following facts are summarized from the opinion of the Supreme Court of Kentucky

affirming, in an appeal as of right, the conviction and sentence of the trial court. *See Bedford v.*

*Commonwealth*, 2000-SC-0357-MR (Ky. Aug. 22, 2002). The Petitioner and two others, Travis

Gray and Michael Robinson, drove around Owen County, Kentucky, looking for Jeff Smith, who

had allegedly stolen guns from the Petitioner. The following day, the same three waited for Smith

at Petitioner's brother's home. The men stopped Smith's car, searched it, then took Smith to

Petitioner's trailer and interrogated him about the missing guns. After Smith denied any knowledge

of the missing weapons, he was taken to the back deck of the trailer, where Petitioner placed a gun

against Smith's head and pulled the trigger. The gun did not fire.

Smith was shot and killed, but the evidence did not clearly reveal who fired the fatal shot,

Petitioner or Robinson. Immediately after the shooting, Smith's body was placed into the trunk of

his vehicle. The three men drove through Kentucky, Tennessee, and Arkansas and arrived at the

home of Gray's brother. During the trip, the three agreed to dismember and dispose of the body, so

they obtained tools from Gray's brother. Gray and Robinson decapitated the body and cut off the

hands and feet; Petitioner did not participate, because he said to do so would make him ill. He did,

however, stab the chest of the torso to release air so the body would not float. The torso, weighted

to sink, was tossed from a bridge into a river. Other body parts were dispersed over three Arkansas

counties.

The remaining facts are summarized from the Court of Appeals of Kentucky opinion

affirming the denial of a Kentucky Rule of Criminal Procedure 11.42 motion. *See Bedford v.*

*Commonwealth*, 2005 WL 195367, 2003-CA-001962-MR (Ky. App. Jan. 28, 2005), *disc. review*

*denied* (Ky. May 11, 2005). In September of 1998, the three co-defendants were indicted for murder, kidnapping, first-degree robbery, and tampering with physical evidence. Prior to trial, Gray and Robinson pled guilty to all charges and were sentenced to life without parole for twenty-five years.

Immediately prior to his trial, Petitioner pled guilty to the tampering charge. His trial took five days, and a jury convicted him of murder, kidnapping, and first-degree robbery. He, too, was sentenced to life without parole for twenty-five years. The Supreme Court of Kentucky affirmed, as noted above. In July of 2003, Petitioner filed the Rule 11.42 motion for post-conviction relief, which the trial court summarily denied. Petitioner appealed, the state appeals court affirmed, and the high court denied discretionary review.

<u>Analysis</u>

As Petitioner Bedford has filed *pro se* for a writ of habeas corpus, his pleadings are to be held to a less stringent standard than those prepared by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a *pro se* petitioner is not "automatically entitled" to a trial of every matter. *Pilgrim v. Littlefield*, 92 F.3d 413, 4156 (6th Cir. 1996). Nor is a court construing pleadings filed by a *pro se* litigant required to "conjure allegations" on that party's behalf. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004)(quoting *Erwin v. Edwards*, 22 Fed. Appx. 479, 580 (6th Cir. 2001)). Nonetheless, in reviewing Petitioner's pleadings, this Court has reviewed the entire record thoroughly and has even looked for meaning between and beyond the typed lines, searching for grounds that might conceivably justify the requested relief.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d)(1) and (2), a federal court may only grant habeas relief if the state court proceedings either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

3

Federal law, as determined by the Supreme Court of the United States," or if those proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The "contrary to" standard is met by a state court decision that is "diametrically different, opposite in character or nature, or mutually opposed" to existing federal law. *Williams v. Taylor*, 529 U.S. 362, 405 (2000)(Part II of Justice O'Connor's opinion, joined by a majority of the Court).   To be found an "unreasonable application" of clearly established federal law, the state court decision must be "objectively unreasonable," not merely erroneous or incorrect. *Id.* at 409-11. The state court need not, however, cite or even know of the relevant Supreme Court precedents, "so long as neither the reasoning nor the result" contradicts those precedents. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003)(per curiam)(quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

"[A] determination of a factual issue made by a State court shall be presumed to be correct" and a petitioner bears the burden of rebutting that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Although Petitioner argues that the state trial court should have granted him an evidentiary hearing on his post-conviction motion, he does not challenge the sufficiency of the evidence adduced in the state court proceedings, explain what facts would have been produced in such a hearing, or request an evidentiary hearing in this Court.[3]

No evidentiary hearing is required under section 2254(e)(1) or (2), because both the state court proceedings and Petitioner Bedford adequately developed the facts relevant to, and necessary

---

[3]In his nineteen-page petition, and his sixty-one-page memorandum in support, Petitioner twice alleges error in the state trial court's refusal to grant him an evidentiary hearing. *See* Doc. 1-6, pp. 13 and 19. In neither document, however, does he request an evidentiary hearing in the federal court or point out additional information necessary to resolve the allegations made in his petition.

4

to resolve, his claims. *See also Valentine v. U.S.*, 488 F.3d 325, 333 (6th Cir. 2007)(citing *Arredondo v. U.S.*, 178 F.3d 778, 782 (6th Cir. 1999)); *but see James v. Brigano*, 470 F.3d 636, 642 (6th Cir. 2006)(where the failure to fully develop the factual record was the fault of the trial court, not the petitioner, section 2254(e)(2) did not bar an evidentiary hearing). In a very recent opinion, the Supreme Court has held that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007). The federal court must consider whether an evidentiary hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to habeas relief." *Id.* However, the district court is not "forced to reopen factual disputes that were conclusively resolved in the state courts." *Id.*

The parties agree that Petitioner Bedford has exhausted the claims raised by presenting them first to the state courts for resolution. No procedural impediment exists, therefore, to an examination of the merits of the seven grounds asserted for the writ, which are quoted from the petition.

**"GROUND ONE: Counsel rendered ineffective assistance prior to trial which prejudiced the Petitioner."**

The established standard for evaluating effectiveness of counsel, *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), requires a petitioner to establish not only that counsel's performance was deficient when measured by an "objective standard of reasonableness," but also that the deficiency resulted in prejudice to the petitioner. Counsel's performance is not viewed with the benefit of hindsight, but in light of his or her perspective at the time of the challenged action. *Id.* at 689. A reviewing court is to give a "heavy measure of deference to counsel's judgments," *id.* at 691, and because the standard is conjunctive, if the court can more easily dispose of the claim on the

ground of "lack of sufficient prejudice," the second prong of the standard, it may do so. *Id.* at 697. To show prejudice, a petitioner must show a reasonable probability that the result of the proceeding would have been different, had counsel not erred. *Id.* at 694.

The claimed deficiencies include failing to seek a change of venue, failing to ask for the jury to be sequestered, waiving Petitioner's right to a speedy trial, failing to effectively utilize an expert or seek expert assistance, waiving Petitioner's right to a competency hearing, and failing to secure Petitioner's brother to testify at trial. Each of these claims was raised in the state court Rule 11.42 proceeding and resolved against Petitioner there, under the *Strickland* standard. *See Bedford*, 2005 WL 195367, at *2-3.

As Petitioner points out in his memorandum, citing to *Sheppard v. Maxwell*, 384 U.S. 333 (1966), a change of venue should be granted if a defendant cannot receive a fair trial due to prejudicial news coverage and local bias against him. Petitioner Bedford provides no factual basis for his claim that he was the subject of prejudicial news coverage. Although he states that the venue was "saturated in pretrial publicity" against him, he provides no copies of or citations to a single article about the case. Even if Petitioner is entirely correct in his factual assertions that lead counsel failed to investigate the need for a change of venue, promised to move for a change but did not, and later admitted that he should have done so, Petitioner has still not shown any prejudice to his case resulting from those purported deficiencies. Therefore, the state court proceedings were not contrary to clearly established federal law or based on an unreasonable determination of the facts, as required by *Williams*, 529 U.S. at 405.

Petitioner's memorandum actually contradicts his claim that counsel failed to request sequestration of the jury. On page 11, he states that the "trial judge refused to sequester the jury

during trial," not that counsel did not ask for sequestration. Whichever set of facts is correct, again Petitioner has made no factual showing of any prejudice from the nonsequestration; he cites no specific instance of a juror being exposed to extrajudicial information during the trial. Thus, the state court holding that Petitioner failed to demonstrate prejudice is not unreasonable or contrary to established federal law.

Petitioner signed a waiver of his speedy trial rights, but he now alleges that trial counsel told him he had to sign the waiver and did not really have a right to a speedy trial. Trial counsel entered his first appearance in December of 1998, and trial was, at that time, set for January of 1999. Counsel indicated that he could not be adequately prepared by that trial date. In fact, the trial did not take place until February of 2000. Petitioner now alleges that he was prejudiced by the delay in that the state had more time to gather evidence from Arkansas, to secure the guilty pleas of the co-defendants, and to "scare off" Petitioner's brother and prevent him from testifying. The state court held that trial counsel was not ineffective for having Petitioner sign the waiver; rather, the court held that "any waiver of . . . a speedy trial falls within the scope of legitimate trial strategy," *Bedford*, 2005 WL 195367, at *2, in light of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" established in *Strickland*, 466 U.S. at 689. Here, trial counsel had Petitioner sign the waiver so counsel could adequately prepare for trial. In a case involving three co-defendants, witnesses in four states, and evidence in two states, the state court's determination that trial counsel was not ineffective for having Petitioner waive his speedy trial rights is not an unreasonable application of federal law.

Petitioner claims that he was denied the opportunity to determine what impact expert testimony might have had on the state court proceedings. The experts mentioned include an

investigator, which trial counsel did utilize, a mitigation specialist, and a ballistics expert. The state court held that by failing to allege specific facts about how such experts could possibly have aided in his defense, Petitioner failed to demonstrate any prejudice from the failure. Again in this Court, Petitioner has failed to set out specific facts indicating how any of these experts could possibly have assisted in his defense. Under the *Strickland* standard, the failure to show prejudice is fatal to the claim of ineffective assistance.

The next claimed pre-trial deficiency was trial counsel's waiving Petitioner's right to a competency hearing. According to the state court opinion, no facts of record indicate that Petitioner's mental health was ever put in issue or questioned by anyone. Petitioner does not allege that he has a particular mental health issue, nor does he point to any facts of record that would cause counsel or the court to question his mental health or his competency to stand trial.

The final pre-trial deficiency alleged is the failure to secure Petitioner's brother Danny's presence and testimony at trial. The state court found that Danny Bedford's statement "did not have favorable information which could reasonably be expected to have altered the outcome of the trial." *Bedford*, 2005 WL 195367, at *3. In his memorandum to this Court, Petitioner alleges that Danny was a neutral witness who could have explained the confrontation between the three co-defendants and the murder victim. At best, Danny would have testified that the parties intended to take the victim to the police station and that the parties had calmed down by the end of the confrontation. So, even if trial counsel's failure to secure Danny's attendance at the trial was a deficiency, which is far from certain, the state court's finding is certainly not an "unreasonable determination" of the facts based on the evidence in the record.

In summary, none of the challenged actions taken by trial counsel, taken separately or

8

together, meet the standard of *Strickland* to support a finding of ineffectiveness of counsel.

**"GROUND TWO: Petitioner received ineffective assistance of counsel which resulted in an involuntary, unintelligent, and unknowing 'blind' guilty plea."**

Petitioner concedes that trial counsel explained that the intent behind having him enter a guilty plea to only the tampering with evidence charge was to make inadmissible the "gruesome details of the treatment of [the victim's] body." This is a clear example of trial strategy that a reviewing court should not second guess. Although the strategy did not ultimately succeed, in that the trial court admitted the evidence anyway, the attempt by trial counsel to prevent the jury from hearing the details of the dismemberment and disposal of the victim's body was surely one that a reviewing court should not second guess with the benefit of hindsight. *See Strickland*, 466 U.S. at 689. Counsel's recommendation to plead to the tampering charge was not an example of deficient performance.

**"GROUND THREE: Counsel rendered ineffective assistance during voir dire by failing to avoid seating a bias[ed] jury panel."**

In the memorandum in support of his motion, Petitioner amended this ground slightly and stated that the claimed deficiency was in failing to utilize a peremptory strike against Juror #90. Juror #90 was, at the time of Petitioner's trial, married to a woman who had been represented in an earlier divorce matter by the prosecutor. Juror #90 indicated that he and his wife were pleased with the prosecutor's services as a private attorney and would hire him again to represent them. Although trial counsel moved to strike Juror #90 for cause, he could not cite precedent to support the strike. Petitioner "strongly encouraged" trial counsel to utilize a peremptory challenge to remove Juror #90, but counsel did not do so, and Juror #90 not only sat on the jury, but also ultimately became the foreman.

9

Petitioner correctly cites the case of *Miller v. Webb*, 385 F.3d 666, 676 (6th Cir. 2004), for the proposition that trial counsel's impaneling of a biased juror creates a presumption of ineffectiveness of counsel, without any showing of prejudice. However, Petitioner has failed to make the initial showing, which must be a showing of actual bias against him, according to the Sixth Circuit. *See id.* at 677. In *Miller*, the juror knew the victim of a crime, who was the only eye witness and a key prosecution witness; the juror indicated that the victim had participated in bible study classes with her, that she had sympathy for her, and that she would be "partial" to the victim. *Id.* at 668. In light of these facts, the Sixth Circuit held that counsel was ineffective for failing to challenge the juror. *Id.* In contrast, Juror #90 in Petitioner's trial was merely married to someone who had previously, and prior to marrying the juror, employed the prosecutor; as the Kentucky Supreme Court pointed out, the juror had no prior relationship with the prosecutor himself, as required by *Fugate v. Commonwealth*, 993 S.W.2d 931, 938 (Ky. 1999)( trial court must disqualify a juror who had a prior professional relationship with the prosecuting attorney and who professes that he or she would seek such a relationship in the future).

Petitioner has failed to show any bias on the part of Juror #90 toward him, as required by *Webb*. Even had counsel been able to cite to the *Fugate* decision, as Petitioner thinks he should have, the trial court could have distinguished that case as easily as the Kentucky Supreme Court did on his direct appeal: Juror #90 lacked any prior relationship with the prosecutor, so *Fugate* was inapposite. Thus, counsel's failure to remove Juror #90 was not ineffective assistance of counsel, because Juror #90 did not express any actual bias.

10

**"GROUND FOUR: Counsel rendered ineffective assistance of counsel during the trial of this case."**

This claimed ground is divided into four subparts: (1) Counsel failed to alert the trial court about contact between the jury and members of the victim's family; (2) counsel failed to effectively cross examine, and object to the testimony of, Candy Robinson; (3) counsel failed to prepare Petitioner for direct examination; and, (4) the cumulative effect of counsel's errors resulted in a trial the result of which is not reliable.

(1) Contact

This factual allegation, that during trial contact between members of the victim's family and members of the jury took place during breaks, was raised first in Petitioner's RCr 11.42 motion and resolved by the state court of appeals. That court stated that the two affidavits containing the facts, from Bedford's wife and her cousin, failed to identify either an individual juror or the family member who allegedly made the contact. Characterizing the affidavits as "conclusory allegations," the state court found the factual support for the claim to be insufficient to even justify an evidentiary hearing on the motion let alone a finding that trial counsel was ineffective for failing to bring the contact to the attention of the trial court.

Petitioner correctly cites to *Remmer v. U.S.*, 347 U.S. 227, 229 (1954), for the proposition that when the possibility of jury tampering or misconduct is brought to a trial court's attention, that court has a duty to investigate, conduct a hearing, and determine whether the defendant was prejudiced by it. According to the Court, that duty is triggered by evidence of "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury." *Id.* In Petitioner's case, according to the state court, the triggering

11

event was not sufficiently established by the facts available. Thus, even if trial counsel's failure to report the alleged contacts to the trial court was ineffective assistance of counsel, Petitioner was not prejudiced, because the facts were not sufficient to trigger the court's duty to investigate. In contrast to the facts of *Remmer*, where a juror informed the trial court about an attempted bribe, *id.* at 228, the affidavits of Petitioner's wife and her cousin did not identify a particular juror, a particular outside contact, or the content of any conversation between these indeterminate parties. If the information provided to trial counsel during trial was as vague as the affidavits filed with the RCr 11.42 motion, and Petitioner has not alleged that any additional facts were conveyed to trial counsel but not incorporated into the later affidavits, trial counsel's failure to transmit the information to the trial court should not be considered ineffective assistance of counsel.

(2) Candy Robinson

Candy Robinson is the sister-in-law of co-defendant Mike Robinson. Petitioner claims that trial counsel was ineffective in failing to impeach this witness, in not objecting to her remaining in the courtroom after testifying, and in agreeing to allow the witness to testify out of order in rebuttal. The state court held that trial counsel's examination of the witness was "within the wide-range of legitimate trial strategy" and that Petitioner failed to show any prejudice as a result of the treatment of Ms. Robinson. 2005 WL 195367, at *4.

Petitioner summarizes the testimony of the witness as concerning events after the victim's death, and opinions about Petitioner's demeanor and concerns about the third co-defendant. Even if anything trial counsel did or did not do with regard to this witness constituted deficient performance, Petitioner cannot meet the prejudice standard. In light of the testimony of the two co-defendants against Petitioner, nothing Candy Robinson did or did not testify to would create a

12

"reasonable probability that . . . the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. Petitioner's own summary of Ms. Robinson's testimony reveals it to be at best peripheral to his guilt or innocence on the charges of kidnapping and murder.

(3) Petitioner's Testimony

As Petitioner pointed out, the state court failed to address this alleged instance of ineffectiveness, so the federal court reviews it *de novo*. Petitioner alleges that trial counsel failed to properly prepare him to testify. That this can be an indication of deficient performance is supported by the case cited by Petitioner, *Chandler v. Jones*, 813 F.2d 773, 781 (6th Cir. 1987)(combination of calling a defense witness expected to invoke the Fifth Amendment, then calling the defendant himself without preparation, and asking improper leading questions, constituted deficient performance). In that case, the federal court squarely addressed the second prong of the *Strickland* analysis, whether the deficient performance prejudiced the defendant, and found that it did not. In light of the state's "strong case" and the defendant's ability to present his version of the facts, despite counsel's use of leading questions, the court could not conclude that counsel's errors prejudiced the defendant. 813 F.2d at 782.

Here, the only prejudice that Petitioner claims is that he put on a "halting, confused presentation" as a result of counsel's failure to prepare him to testify and opened the door to the prosecutor's use of prior crimes and bad acts, including that had a prior arrest for a DUI and resisting arrest and that he could be violent when intoxicated. However, Petitioner does not specify how he was prejudiced by this testimony. Therefore, even assuming that trial counsel's failure to adequately prepare Petitioner for his testimony was an instance of deficient performance, Petitioner has failed to meet his burden of showing that the error prejudiced his defense, in that the result of the trial

13

would have been different, had trial counsel not erred.

(4) Cumulative Effect

As a catch-all allegation, Petitioner claims that errors that might be considered harmless when viewed in isolation might require reversal when considered cumulatively. For this proposition, he cites the case of *Campbell v. U.S.*, 364 F.3d 727, 736 (6th Cir. 2004). That case goes on, however, to state that "the accumulation of non-errors cannot collectively amount to a violation of due process." *Id.* Because the movant could not establish that the alleged errors deprived him of a trial that was "fair" and "reliable" in result, he was not entitled to relief under 28 U.S.C. § 2255. 364 F.3d at 736. Petitioner here is similarly unable to make such a showing and is not, therefore, entitled to the requested relief under § 2254.

**"GROUND FIVE: Counsel rendered ineffective assistance of counsel during the penalty phase of the trial."**

In the appeal of the summary denial of his RCr 11.42 motion, Petitioner failed to allege what specific evidence counsel should have investigated and produced at the penalty phase of his trial. The Court of Appeals held that his "general and vague allegations" of failure to investigate and failure to hire a mitigation specialist did not warrant relief under the rule. Further, the Court of Appeals held that trial counsel's "decisions during the penalty phase of the trial were within the scope of legitimate trial strategy." 2005 WL 195367, at *4.

The memorandum filed in support of the current motion in this Court is more specific. Petitioner alleges that he had a work history that could have been presented; that he had suffered a "closed head injury" the jury was not informed of; and, that he had a drug and alcohol problem he was "trying to get under control." Doc. 1-7, p. 49. He concedes that both he and his wife were

called to testify during the penalty phase of his trial, however, so it cannot be said that trial counsel failed to put on any evidence in mitigation.

The evidence that Petitioner Bedford claims should have been presented in mitigation by trial counsel does not appear relevant to the mitigating factors established in KRS 532.025(2)(b)1-8. The state court held that trial counsel's performance fell within the scope of legitimate trial strategy. In light of these circumstances, and of *Strickland's* instruction that trial counsel's decisions should not be viewed with perfect hindsight, but with a "heavy measure of deference," 466 U.S. at 691, trial counsel's performance at the sentencing phase of Petitioner Bedford's trial should not be found to be deficient. Even if it had been, however, it is hard to see how Petitioner was prejudiced: three persons participated in the events that lead to the death and dismemberment of Jeffrey Smith, and all three received identical sentences. Nothing that trial counsel did or did not do at the sentencing phase justifies the grant of a new sentencing under § 2254.

**GROUND SIX: The trial court's failure to strike unqualified jurors for cause violated Petitioner's right to an impartial jury and unimpaired use of peremptory [challenges] and is an unreasonable application of clearly established federal law."**

At trial, Petitioner Bedford exhausted his nine peremptory challenges; two of those challenges were used to remove jurors he had unsuccessfully moved to strike for cause. In his appeal as of right, the Supreme Court of Kentucky considered whether the trial court's failure to excuse jurors for cause was reversible error and concluded that it was not, holding that the trial court had not abused its discretion in denying the motions to strike for cause. App. A, pp. 6-10. The trial court's decisions whether to exclude jurors are based on credibility findings and are subject to the presumption of correctness of § 2254. *Wainwright v. Witt*, 469 U.S. 412, 429 (1985)(jurors who stated that they could not recommend the death penalty were properly excused for cause).

15

In the current motion, Petitioner adds the allegation that the trial court's refusal to strike jurors for cause violated his Sixth Amendment right to an impartial jury. However, the two jurors against whom a motion to strike for cause was denied were both excused by trial counsel's use of peremptory challenges. The only other juror Petitioner alleges was improperly seated, because all nine peremptory challenges had been used, was Juror #90. As discussed in Ground #3 above, Juror #90 did not indicate any actual bias against Petitioner. The authorities cited by Petitioner in the lengthy discussion of voir dire and the seating of an impartial jury hinge on a showing of actual bias by a juror. *See e.g. Hughes v. U.S.*, 258 F.3d 453, 458 (6th Cir. 2001). Petitioner cannot make that showing as to any juror on the panel that convicted him.

The Supreme Court of Kentucky rejected Petitioner's claim regarding the seating of the jury on an adequate and independent state ground. In addition, the findings on whether to exclude jurors are factual ones imbued with a presumption of correctness. Petitioner has made no showing that any biased juror sat on the jury that convicted him: Juror #1 and Juror # 107 did not sit on the jury, and Juror #90 was not actually biased. The trial court's failure to excuse the jurors for cause did not involve an unreasonable application of federal law and does not support the grant of the requested relief under § 2254.

**"GROUND SEVEN: The grand jury's failure to include in its indictment the essential element of aggravating circumstances for murder and kidnapping denied Petitioner Due Process of Law and precluded the prosecutor from seeking aggravated sentences for these offenses."**

Finally, Petitioner Bedford claims that his Due Process rights were denied by the failure of the grand jury to include in the indictment against him the specific aggravating circumstances that would make him eligible for a sentence of life without parole for twenty-five years. This argument was raised before, and rejected by, the Supreme Court of Kentucky on direct appeal of Petitioner's

16

conviction and sentence. App. A, pp. 12-13. That Court held that the indictment was sufficient under RCr 6.10(2), which requires that an indictment contain "a plain, concise and definite statement of the essential facts constituting the specific offense." That Court has also clearly held that "[a]ggravating circumstances are not required to be charged in the indictment." *Epperson v. Commonwealth*, 197 S.W.3d 46, 59 (Ky. 2006). Rather, Kentucky law requires that the prosecution satisfy the notice requirement of KRS 532.025, which the Court found did happen in Petitioner's case. App. A, p. 13. That statute also requires that the aggravating factor or factors must be found by a jury in writing, which also happened in Petitioner's case. The precise argument advanced by Petitioner Bedford has been considered and rejected numerous times by the Supreme Court of Kentucky. *See e.g. Ernst v. Commonwealth*, 160 S.W.3d 744, 751-52 (Ky. 2005); *Soto v. Commonwealth*, 139 S.W.3d 827, 841 (Ky. 2004).

Nor does this adherence to state law involve an unreasonable application of federal law. Petitioner relies upon three recent United States Supreme Court cases, *Jones v. U.S.*, 526 U.S. 227 (1999); *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and, *Ring v. Arizona*, 536 U.S. 584 (2002). None of the cited cases support the contention that the indictment must set out the aggravating factors. *Jones* does so hold, but it applied federal law. 526 U.S. at 243 n.6. In neither *Apprendi* nor *Ring* did the Supreme Court address the sufficiency of an indictment. 530 U.S. at 477 n.3; 536 U.S. at 597 n.4. In *Apprendi*, the Court specifically stated that the Fourteenth Amendment had not been construed to incorporate against the states "the Fifth Amendment right to presentment or indictment by a Grand Jury." 530 U.S. at 477 n.3 (quoted in *Soto*, 139 S.W.3d at 842).

The Supreme Court of Kentucky's holding that the indictment was sufficient in Petitioner's case does not involve an unreasonable application of federal law such that Petitioner is entitled to

17

relief under 28 U.S.C. § 2254.

### Conclusion

None of the numerous grounds raised in the petition justify the grant of the writ, because none involves an unreasonable application of clearly established federal law or an unreasonable determination in light of the established and uncontroverted facts. Therefore, IT IS RECOMMENDED THAT the "Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus" [Doc.6] be DENIED and the matter dismissed from the Court's docket.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Courts within ten days of service, or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).   A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)).   A party may file a response to another party's objections within ten days after being served with a copy of those objections. Fed. R. Civ. P. 72(b).

Dated the _____ **26** _____ day of July, 2007.


J. GREGORY WEHRMAN
UNITED STATES MAGISTRATE JUDGE

18