UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:05-82

KENNETH JAMES BEDFORD                                                                    PETITIONER

v.                                            **OPINION AND ORDER**

PATTI WEBB, Warden                                                                       RESPONDENT

\* \* \* \* \* \* \* \*

This matter is before the Court on Petitioner Kenneth James Bedford's pro se petition under 28 U.S.C. § 2254 for a writ of habeas corpus [R. 1]; the Magistrate Judge's Report and Recommendation recommending that the petition be denied [R. 17]; and the Petitioner's objections to the Report and Recommendation [R. 18].

Pursuant to 28 U.S.C. § 636(b)(1), the Court must make a *de novo* determination of those portions of the Magistrate Judge's Report and Recommendation to which objection is made. For the reasons stated below, Bedford's habeas corpus petition is DENIED.

**I.      Background**

Petitioner Bedford was convicted by the Owen County Circuit Court of murder, kidnaping, robbery, and tampering with physical evidence. He received a life sentence without eligibility for parole for twenty-five years, and is currently serving out that term in the Green River Correctional Complex.

The opinion of the Kentucky Supreme Court, which affirmed Bedford's conviction, summarizes the facts of the case. *See Bedford v. Commonwealth*, 2000-SC-0357-MR (Ky. 2000) (unpublished) [hereinafter *Bedford*, Sup. Ct.]. Bedford, along with his co-defendants, Travis

Gray and Michael Robinson, traveled to Owen County to search for the victim, Jeff Smith, a man who allegedly had stolen guns from Bedford. After waiting for Smith at the home of Smith's brother, the defendants stopped Smith at gunpoint, and took him to Bedford's trailer. After Smith denied knowing about the guns, he was taken to the back deck of the trailer, where Bedford placed a gun against Smith's head and pulled the trigger. After the gun failed to fire, one of the defendants took another gun and shot Smith, killing him. Smith's body was then taken to the home of Gray's brother Carlton, where it was decapitated and dismembered by Gray and Robinson. Though Bedford did not participate in this, he did stab Smith's chest to release air in the body to prevent it from floating. The body was tossed into a river and the remaining body parts were disbursed over three counties in Arkansas.

After the Kentucky Supreme Court affirmed Bedford's conviction, he made a motion for post-conviction relief under Kentucky Rule of Civil Procedure 11.42, which was summarily denied by the circuit court. This denial was affirmed by the Kentucky Court of Appeals, and discretionary review by the Kentucky Supreme Court was denied. *Bedford v. Commonwealth*, No. 2003-CA-001962-MR (Ky. Ct. App. Jan. 28, 2005) [hereinafter *Bedford*, Ct. App.]

Bedford then petitioned this Court for a writ of habeas corpus from his conviction, or in the alternative, for an evidentiary hearing to better develop his claims.[1] Bedford alleges that he received ineffective assistance of counsel, that the trial court failed to strike biased witnesses for cause, and that the prosecutor was precluded from obtaining an aggravated sentence because aggravating factors were not included in the indictment. The Magistrate Judge issued a Report

---

[1] Though the Magistrate Judge points out that Bedford did not request an evidentiary hearing in his petition for habeas corpus, Bedford did make such a request in his objections to the Report and Recommendation.

and Recommendation on July 26, 2007, recommending denial of the writ on all Bedford's asserted grounds. Bedford made numerous objections to the Report and Recommendation, which are set forth and analyzed below.

## II.     Analysis of Stated Objections

### 1.     Magistrate Judge's "Finding of Fact"

Bedford's first objection is to what he labels an incorrect "finding of fact" by the Magistrate Judge in the factual and procedural background of the Report and Recommendation. The Magistrate Judge states that "the evidence did not clearly reveal who fired the fatal shot, Petitioner or Robinson." Bedford states that the evidence proved that Gray, not Bedford, fired the shot, and then presents his version of the events surrounding the crime.

It is obvious, however, that the Magistrate Judge's statement was merely a recitation of a statement from the Kentucky Supreme Court opinion, and not his own factual finding. *See Bedford*, Sup. Ct. at 2. Moreover, Bedford cannot simply reargue his version of the crime at this stage, after a jury and the Kentucky Supreme Court have already rejected it. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner can only rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This objection is without merit.

### 2.     Counsel Rendered Ineffective Assistance Prior to Trial Which Prejudiced the Petitioner

For Bedford to prevail in his claim that he had ineffective assistance of counsel, he must establish two things: first, that his counsel's performance was deficient when measured by an objective standard of reasonableness; and second, that this deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

3

    **a)**    **Change of Venue**

Bedford charges that his counsel's failure to seek a change of venue constituted ineffective assistance of counsel. He alleges in his objections to the Report and Recommendation that law enforcement officials were discussing details of the case at a local restaurant, and that some potential jurors overheard graphic details of the case at a VFW hall. Further, Bedford alleges that some of the potential jurors were acquainted with the victim or his family, or were related to law enforcement officials. The Magistrate Judge stated that Bedford had failed to demonstrate any prejudice resulting from the failure to move for a change of venue. The Court agrees. Bedford has failed to identify any of the individuals who engaged in the above conversations, or any evidence that the conversations even took place at all. The Court will not simply presume prejudice from these unverified assertions. This objection is without merit.

    **b)**    **Failing to Ask for the Jury to be Sequestered**

The Magistrate Judge found that Bedford cannot establish any prejudice resulting from his counsel's failure to sequester the jury, since Bedford could not cite to any specific instances of individual jurors being exposed to extrajudicial information during the trial. Bedford objects to this, arguing that the Magistrate Judge ignored "Petitioner's allegations, supported by affidavits, that jurors were, during the course of trial, being exposed to extrajudicial information from the victim's family." The Kentucky Court of Appeals also considered this argument and could find no factual support indicating any jurors were exposed to extrajudicial information, or that prejudice resulted from the failure to sequester the jury. The Court of Appeals characterized Bedford's argument here as conclusory allegations of extrajudicial contacts and prejudice, finding such allegations insufficient for even an evidentiary hearing. This Court agrees with the

Magistrate Judge that more is needed to obtain habeas relief or an evidentiary hearing in federal court. The objection is without merit.

**c)      Waiver of Speedy Trial Rights**

Bedford argues that his counsel improperly persuaded him to waive his speedy trial right. He says that he was arrested in August 1998 and held continuously until his trial in February 2000. His trial was originally set for January 1999, but this date was withdrawn after the trial judge died and a new judge was appointed. Bedford's counsel apparently said that he would be unable to be prepared by January 1999, without knowing that this date had been withdrawn, and that Bedford did not have a right to a speedy trial anyway. Bedford waived his speedy trial right on these grounds. The Magistrate Judge and the Kentucky Court of Appeals found that counsel's acts fell within the grounds of legitimate trial strategy. Bedford objects that his waiver should be considered ineffective because he was basing his waiver on inaccurate information, namely, the date of the trial (and thus the time for his counsel's trial preparation) and his right to a speedy trial in the first place.

Bedford's claim here could be interpreted as either an ineffective assistance claim over his counsel's obtaining a waiver of Bedford's speedy trial right, or as a violation of his right to a speedy trial, wholly apart from his counsel's performance. If a defendant validly waives his speedy trial right, then there clearly can be no violation of the right, even though obtaining the waiver may constitute ineffective assistance of counsel. However, if the waiver is invalid, then the speedy trial right is still effective and may have been violated, even though a validly obtained waiver may have been objectively effective assistance of counsel. Though Bedford styles this complaint as one of ineffective assistance of counsel, the Court need not take this at face value,

since pro se plaintiffs' pleadings are to be held to a less stringent standard than those prepared with the assistance of counsel. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Since Bedford asserts that his speedy trial waiver was invalid, substantively, the claim appears to assert a speedy trial violation, rather than ineffective assistance.

The Magistrate Judge did not address whether Bedford's waiver was effective; he focused solely on whether the waiver constituted ineffective assistance of counsel. Bedford claims that he agreed to the waiver on his counsel's assertions that he could not prepare for trial by January 1999 and that Bedford had no right to a speedy trial anyway. Bedford was unaware that this January trial date had been dismissed by the newly appointed judge, and it is unexplained why Bedford would have had no right to a speedy trial even absent a waiver. Assuming the factual validity of Bedford's assertions here, the Court could reasonably find that the purported speedy trial waiver was ineffective. However, even assuming the waiver's ineffectiveness, Bedford can have no ground for relief unless he can also show that his right to a speedy trial was actually violated.

The Court finds that Bedford's speedy trial right was not violated. Whether a speedy trial violation occurred is governed by a balancing test consisting of four factors: length of the delay, reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972); *Wilson v. Mitchell*, 250 F.3d 388, 394-96 (6th Cir. 2001). None of these factors are determinative; they must be viewed together and balanced to determine whether there is a speedy trial violation. *Barker*, 407 U.S. at 533. Here, the length of the delay was seventeen months, measured from the time of Bedford's arrest to his trial date. The Sixth Circuit has stated that over one year's delay is presumptively prejudicial, but it is clear

that the Court only meant that such a delay is sufficient to continue the speedy trial analysis, not that this automatically amounts to a speedy trial violation. *See Wilson*, 250 F.3d at 394 (finding no speedy trial violation where the delay was twenty-two years). The reasons for the delay are unstated. However, this was clearly a complex case, "involving three co-defendants, witnesses in four states, and evidence in two states." Report and Recommendation, p. 7. Further, a new judge had to be unexpectedly appointed to the case. This may explain the length of the delay employed. The inquiry is to find "who is more to blame for the delay," the defendant or the government. *Doggett v. United States*, 505 U.S. 647, 651 (1992). Here, it appears that neither Bedford nor the government is to blame for the delay. After the alleged waiver, Bedford did not assert his right to a speedy trial until his motion for post-conviction relief, even after the direct appeal of his conviction. This does not appear to be a very timely assertion of Bedford's right. Finally, Bedford's showing of prejudice from this delay is unsatisfactory. Bedford argues that the delay allowed the prosecution to gather more evidence, obtain guilty pleas from his co-defendants, and "scare off" a key witness for the defense. The first two prejudice arguments show nothing more than the preparation of the prosecution's case against Bedford. It should be remembered that Bedford had the same length of time to gather evidence and interview the co-defendants as did the prosecution. For Bedford's third prejudice argument, he utterly fails to explain what the prosecution did to prevent his accessing this witness. Merely claiming that the witness was "scared off" is an insufficient showing of prejudice to one's case. Similarly, this finding of no prejudice resulting from the length of the trial delay also forecloses an ineffective assistance of counsel claim on grounds of Bedford's purported speedy trial waiver.

      Thus, even if Bedford's allegations regarding the speedy trial waiver are deemed accurate,

the Court finds that there was no violation of the speedy trial right. This objection is without merit.

**d)      Failing to Effectively Utilize an Expert or Seek Expert Assistance**

Bedford argues that his counsel failed to effectively utilize an investigator, and failed altogether to obtain a mitigation expert and ballistics expert. The Magistrate Judge rejected his claim of ineffective assistance of counsel on this ground because Bedford could not identify any specific way that such experts would have aided his defense; thus, no prejudice could be demonstrated. In his objection, Bedford still offers no such specificity, he only says that he was unable to develop this claim due to his being denied an evidentiary hearing in state court. When the state court rejected this claim, it also pointed out that Bedford did not explain "how such experts could have aided in his defense, what their expected testimony would have been, or even if there are any such experts who would have testified favorably to his defense." *Bedford*, Ky. Ct. App. at *2. Obtaining a writ of habeas corpus or a post-conviction evidentiary hearing requires the Petitioner to do more than just broadly assert that experts were needed in his case. Bedford's failure to explain how expert testimony would have influenced the outcome of his case precludes relief on this ground. This objection is without merit.

**e)      Failing to Secure Petitioner a Competency Hearing Once Petitioner's Competency was Put in Question**

Bedford claims ineffective assistance of counsel because he was not granted a hearing on the issue of his competency to stand trial. He stated that his counsel obtained funds for a competency evaluation, that the state court ordered this evaluation, that the evaluation actually took place, but that nevertheless, no competency hearing ever took place. The Magistrate Judge, however, pointed out that the state courts found no evidence that Bedford's competency to stand

8

trial was ever put in issue, and that he has not alleged any facts that would have caused his mental competency to be legitimately questioned. Thus, no prejudice could be shown. Bedford objects to this, arguing that his competency was in issue, and once in issue, the competency hearing cannot be waived. *Pate v. Robinson*, 383 U.S. 375, 384 (1966).

The Court need not re-examine the issue of whether Bedford's competency was actually put in issue in the state court. The Magistrate Judge was correct in his assessment that Bedford cannot establish prejudice from any actions of his counsel that failed to secure him a competency hearing. Where a petitioner alleges a failure to hold a competency hearing, the prejudice element of the ineffective assistance of counsel claim must still be satisfied before habeas relief can be granted. *Stewart v. Morgan*, 2007 U.S. App. LEXIS 11804, at *11-15 (6th Cir. May 11, 2007); *Taylor v. Horn*, 2007 U.S. App. LEXIS 22448, at *52 (3d Cir. Sept. 20, 2007). Prejudice can be established by evidence that the petitioner actually was not competent to stand trial. *See Stewart*, 2007 U.S. App. LEXIS 11804, at *11-15; *Taylor*, 2007 U.S. App. LEXIS 22448, at *52; *see also Wood v. Quarterman*, 491 F.3d 196, 205 (5th Cir. 2007). As the Magistrate Judge explained, Bedford has offered no evidence that he was incompetent to stand trial. Bedford has not refuted this. Bedford thus cannot establish prejudice from his counsel's failure to obtain a competency hearing. This objection is without merit.

3. **Petitioner Received Ineffective Assistance of Counsel Which Resulted in an Involuntary, Unintelligent, and Unknowing "Blind" Guilty Plea**

Bedford entered a guilty plea to the charge of tampering with evidence upon the advice of his counsel that by entering this plea, the prosecution would be unable to enter prejudicial evidence about the condition of the victim's body. This strategy did not succeed, and the evidence was admitted anyway. Bedford says that this amounts to ineffective assistance of

9

counsel because his counsel "told him falsehoods in order to secure a guilty plea." The Magistrate Judge stated that counsel's advice amounted to a trial strategy that courts should not second guess through hindsight, and the fact that the strategy was ultimately unsuccessful is no reason to declare counsel's actions deficient performance. Bedford objects, explaining that for a guilty plea to be valid, it must be voluntary, knowing, and intelligent. *Boykin v. Alabama*, 395 U.S. 238 (1969). He further explains that information provided by an attorney to a defendant to obtain a guilty plea must be accurate for the plea to be valid. *McAdoo v. Elo*, 365 F.3d 487, 499 (6th Cir. 2004).

It is true that when an attorney "grossly misinforms a defendant" and the defendant "relies on that misinformation, the defendant may have been deprived of his constitutional right to counsel." *Id.* However, it is clear to this Court that Bedford was not "grossly misinformed" by his counsel. As the Magistrate Judge and the Court of Appeals explained, advising a guilty plea in an attempt to prevent the introduction of other evidence is a legitimate trial strategy. The fact that the strategy did not work out as Bedford and his counsel had hoped does not mean that Bedford was being misinformed or being provided with false information. The Court is to give a "heavy measure of deference to counsel's judgments," even if those judgments turn out in hindsight to be less than ideal. *Strickland*, 466 U.S. at 691. Bedford cannot establish that his counsel's performance was deficient. This objection is without merit.

**4.     Counsel Rendered Ineffective Assistance During Voir Dire by Failing to Avoid Seating a Biased Juror**

Bedford has argued that his trial was unconstitutionally tainted by the presence of a biased juror, Juror #90, who served as the foreman in Bedford's case. During voir dire, Juror #90 revealed that his wife had previously been represented by the prosecutor in a divorce proceeding.

The Juror indicated that he and his wife had both been pleased with the prosecutor's representation, and that he would consider hiring the prosecutor in the future if the need arose. Bedford's counsel moved to strike Juror #90 for cause, but the trial court denied this, failing to find the Juror to be biased. Bedford says that he urged his counsel to utilize a peremptory strike to remove Juror #90, but counsel never did. He says this failure to remove Juror #90 with a peremptory strike amounts to ineffective assistance of counsel. The Magistrate Judge disagreed, saying that Bedford did not show that Juror #90 was actually biased against Bedford.

The Court need not resolve the issue of bias here. In a similar objection that Bedford makes to the trial court's failure to strike Juror #90 and two other jurors for cause, Bedford reveals that his counsel had already exhausted his available peremptory challenges by the time he objected to Juror #90. Petition for Habeas Corpus, p. 30. Thus, even assuming Juror #90 to be biased, Bedford's counsel could not possibly have used a peremptory challenge to remove the juror. Counsel's performance was therefore not deficient. This objection is without merit.

**5.    Counsel Rendered Ineffective Assistance During Trial**

**a)    Failure to Alert the Trial Court to Contact between the Jury and Members of the Victim's Family**

Bedford here uses the same arguments advanced in his earlier objection over counsel's failure to sequester the jury: that several jurors were seen talking with members of the victim's family during the trial. He says that the failure to bring this to the court's attention means that his counsel provided ineffective assistance. The Magistrate Judge found Bedford's evidence of improper jury contacts to be insufficient, agreeing with the state courts that Bedford only presented general, conclusory allegations that do not trigger a court's duty to investigate jury misconduct. Bedford simply objects by repeating his argument. This Court agrees with the

Magistrate Judge for the same reasons expressed in the jury sequestration argument. This objection is without merit.

**b)     Cumulative Effect**

Bedford argues that the cumulative effect of his counsel's errors result in a valid ineffective assistance of counsel claim. This Court has found no errors in Bedford's counsel's performance. "[T]he accumulation of non-errors cannot collectively amount to a violation of due process." *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004). This objection is without merit.

**6.     Counsel Rendered Ineffective Assistance of Counsel During the Penalty Phase**

Bedford argues that his counsel's failure to investigate and to hire a mitigation specialist during the penalty phase of his trial constitute ineffective assistance of counsel. Specifically, Bedford alleges that these failures prejudiced him because they deprived him of the opportunity to present mitigating evidence about his work history, that he had suffered a closed head injury, and that he had a drug and alcohol problem. The Magistrate Judge rejected this argument, finding that counsel's performance fell within the scope of legitimate trial strategy, that the above information did not appear to be relevant to Kentucky's mitigating factors, and that both Bedford and his wife testified during the penalty phase and thus had the opportunity to offer this mitigating evidence but chose not do so.

Bedford correctly cites *Wiggins v. Smith*, 539 U.S. 510 (2003), to show that the failure to conduct a mitigation investigation can constitute an ineffective assistance of counsel claim. However, *Wiggins* also makes it clear that prejudice still must be shown. *Id.* at 534. Here, Bedford can show none. The Court agrees with the Magistrate Judge that the information

12

Bedford wanted to offer is not relevant to the Kentucky mitigating factors.  *See* KY. REV. STAT. ANN. § 532.025 (2005).  Moreover, Bedford could have offered this information at any time during the penalty phase through his own testimony or his wife's.  This was not done.  It cannot be said that Bedford was prejudiced by counsel's failure to conduct a mitigation investigation under these circumstances.  This objection is without merit.

**7.      Trial Court's Failure to Strike Unqualified Jurors for Cause**

Bedford argues that the trial court failed to strike three biased jurors for cause**.**  However, two of these jurors, #1 and #107, were excused by means of peremptory strikes by Bedford's counsel.  Therefore, the Court need not determine whether the trial court erred in failing to strike these jurors on the grounds of bias**,** as they did not sit on Bedford's jury anyway.

Juror #90, who Bedford also claims was biased, did ultimately sit on the jury, since there were no remaining peremptory strikes that could be used to excuse the juror.  The Kentucky Supreme Court and the Magistrate Judge upheld the trial court's decision not to strike Juror #90.  They found no bias on the part of Juror #90 to merit striking him for cause.  This Court agrees.

For Bedford to succeed in his claim of error on the trial judge's part in seating Juror #90, he must show that the juror was actually biased against him.  *See Miller v. Webb*, 385 F.3d 666, 674 (6th Cir. 2004).  Though the trial judge must not seat a biased juror, *id.* at 673, and Bedford's habeas petition must be granted if the judge in fact did this, *id.*, whether a juror is actually biased against the petitioner "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province.  Such determinations [are] entitled to deference even on direct review; '[the] respect paid such findings in a habeas proceeding certainly should be no less.'" *Wainwright v. Witt*, 469 U.S. 412, 428 (1985) (quoting *Patton v. Yount*, 467 U.S. 1025,

1038 (1984)).

As discussed earlier, Juror #90 revealed that his wife had been represented in a divorce by the prosecutor, that both he and his wife were pleased with the prosecutor's services, and that he would consider hiring the prosecutor in the future. The trial court denied a challenge to the juror for cause on this basis. "'Challenges for cause are subject to approval by the court and must be based on a finding of actual or implied bias.'" *Hughes v. United States*, 258 F.3d 453, 457 (2001) (quoting *Virgin Islands v. Felix*, 567 F.2d 1274, 1277 n.5 (3d Cir. 1978)). Though Juror #90's statements indicated a favorable impression of the prosecutor's professional abilities, this does not necessarily translate into actual bias against the criminal defendant, Bedford. "'Actual bias is "bias in fact"—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'" *Hughes*, 258 F.3d at 463 (quoting *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)). The fact that Juror #90 was pleased with the prosecutor's services in an earlier, unrelated matter does not reasonably lead to an inference that the juror would be unable to view the facts and parties before him in the present matter fairly and impartially.

This is not changed by the fact that no effort was made by the trial court or counsel to rehabilitate Juror #90 or to seek a subsequent assurance of impartiality. Bedford has pointed out that, "[p]ursuant to the Sixth Amendment, for a finding of juror impartiality . . . the relevant question is 'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.'" *Miller*, 385 F.3d at 673 (quoting *Patton*, 467 U.S. at 1036). However, it is clear to this Court that rehabilitation or subsequent assurances of impartiality are only required when a juror has made statements that sufficiently raise an inference of actual bias against the petitioner. Juror #90's

statements, unlike those in other cases, do not raise such an inference of actual bias. In *Miller*, a juror stated that she "would be kind of partial to [the victim] . . . because I kind of have sympathy for her in this case, with her being the victim." *Miller*, 385 F.3d at 674. In *Hughes*, a juror explicitly stated that, "I don't think I could be fair." *Hughes*, 258 F.3d at 456. In *Wolfe v. Brigano*, 232 F.3d 499 (6th Cir. 2000), four jurors were at issue for bias. The first said he did not think that he could be fair and impartial. The second said that it was "hard to say" whether her relationship with the victims's parents would influence her decision. The third juror had read newspaper accounts of the case earlier and "expressed doubt as to whether she could put aside those reports and decide the case solely on the evidence presented at trial." The fourth juror "doubted he would require the prosecution to prove its case beyond a reasonable doubt." *Id.* at 502-03. In all of these cases, the Sixth Circuit held that the failure to seek a subsequent assurance of impartiality was unconstitutional, but in all of these cases, the statements of juror impartiality could not be clearer. Juror #90 did not specifically state any partiality for a party or the victim, he did not indicate that he could not be fair towards the defendant, and he did not indicate any preconceived notions about the case. Moreover, the trial judge was present to observe Juror #90's demeanor and credibility, and found no actual bias in the juror. There was no error on the trial judge's part in failing to remove Juror #90 for cause.

Bedford and the Magistrate Judge have both discussed *Fugate v. Commonwealth*, 993 S.W.2d 931 (Ky. 1999) in this respect. In *Fugate*, the Kentucky Supreme Court held that a juror who has a prior professional relationship with the prosecutor and professes that he or she will seek such a relationship in the future must be removed as a biased juror. *Id.* Juror #90, however, did not himself have a prior professional relationship with the prosecutor, rather, his wife did.

*Fugate* is therefore distinguishable from Bedford's case. This objection is without merit.

**8.      Failure to Include Aggravating Circumstances in the Indictment**

Bedford argues that the failure to include the aggravating circumstances that would make him eligible for life without parole for twenty-five years denied him due process of law and precluded the prosecutor from seeking this penalty. The Magistrate Judge disagreed, saying that Kentucky courts have held that aggravating factors are not required to be in the indictment, and that here the Kentucky Supreme Court held that Bedford's indictment satisfied Kentucky's notice requirement. Further, the Magistrate Judge argued that this does not involve an unreasonable application of federal law, since federal law does not require that state indictments set out aggravating factors, only that federal indictments set them out.

Upon its own review of relevant case law, the Court agrees with the Magistrate Judge that there is no due process requirement that states must set forth aggravating factors in indictments in order for these factors to be utilized at a trial's penalty phase. *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) states that "any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." However, this case was interpreting federal, rather than state law. In *Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000), the Court was dealing with state law, but the issue of whether an indictment must include aggravating factors was explicitly avoided by the Court. Moreover, the Court pointed out that the Fourteenth Amendment has not been interpreted to apply the Fifth Amendment's right to presentment or indictment of a grand jury to the states. *Id.* The Court does not believe federal case law requires states to set forth aggravating factors in indictments. Neither is this required under Kentucky state law. *See Ernst v.*

*Commonwealth*, 160 S.W.3d 744, 752 (Ky. 2005).  This objection is without merit.

For these reasons, the Court hereby **ORDERS** as follows:

(1) The Magistrate Judge's Report and Recommendation [R. 17] is hereby **MODIFIED** to find that although Petitioner's allegations, if true, may constitute an invalid speedy trial waiver, there was no speedy trial violation;

(2) The Report and Recommendation is otherwise **ADOPTED** as the Opinion of this Court; and

(3) The Petitioner's Petition for a Writ of Habeas Corpus is **DENIED**.

This the 13th day of November, 2007.

Signed By:

*Karen K. Caldwell*

**United States District Judge**